Good morning. May it please the court, Jonathan Libby, appearing on behalf of appellant Tommie Thompson. I intend to reserve about two minutes for rebuttal. Your honors, unless the court has any objection, I'd like to focus on two issues this morning, either which should result in vacating the revocation in this case. The first is the government's failure to establish that Mr. Thompson received notice of the condition that he was found to have violated. The second is the court's erroneous belief that revocation and imprisonment were mandatory in this case. So first, with respect to notice, the government simply failed to introduce any evidence that Mr. Thompson had notice of the particular condition that he was found to have violated. And what about the judgment? The judgment sentencing listed the conditions. Is that not sufficient? It's not, your honor, because there's nothing in the record that indicates that he received a copy of that judgment. And there's nothing in the record to indicate that the specific condition was read or stated at the sentencing hearing. Wasn't there testimony from the probation officer that the officer assigned to the file had reviewed the conditions with Mr. Thompson? What probation officer Carlos testified was that he certainly did not discuss any of the conditions with Mr. Thompson. The originally assigned probation officer apparently discussed the conditions, but it did not indicate what that meant. It was just notation in the file. There's nothing in the record that indicates that he was, in fact, informed of this particular condition. So what you're suggesting is that we should infer from the notation that the probation officer only selectively notified him of a few conditions rather than a notation that says notified the defendant of his conditions means all the conditions? Or perhaps the probation officer may have assumed that he had received a copy of the written conditions 20 years prior and may have simply said, you received a copy of the conditions, I'm sure, make sure that you follow them. Again, unless there's something in the record that indicates that... Wasn't there testimony that Mr. Thompson's probation officer testified that the officer who preceded him had given Mr. Thompson specific notice in 2015? No, Your Honor. What he said was, and again, this was all on cross-examination, so there's none of this evidence was actually introduced by the government. Absolutely. No, I appreciate that. On cross-examination, defense counsel said, and you gave him information about his conditions around November 2nd, is that correct? Not me. It was the initially assigned probation officer. And then the next question, as far as the records go, he was informed about this condition. It was just a generic statement that there was a discussion about the conditions. What you're suggesting is then we need to assume that the probation officer, for some unknown reason, decided to pick and choose from conditions and only notify him of some and not others? We don't know, Your Honor. I mean, the fact is, the government could have put on the originally assigned probation officer. Maybe, maybe not. I mean, it's not uncommon for probation officers to be reassigned, transferred, retire, files to be transferred to another officer. That happens probably every day in the country. So there's nothing untoward about that. Oh, absolutely not. And the probation officer that assumes the file then reads the file and testifies from it constantly. This happens every day in district court. So when the probation officer comes in and says the notation indicates the previous officer reviewed the conditions, is there any case law that says that's not enough? Well, again, he didn't say he reviewed the conditions. There was a discussion about the conditions. And again, this is all premised on the question from defense counsel. So this is not a specific testimony from the probation officer explaining what had taken place or exactly what the file indicated. Probation officer on the stand answering questions from the defense counsel is not testimony? It's certainly testimony, Your Honor. But defense counsel, of course, was not there to establish that he had, that Mr. Thompson had received notice. And the question was not worded in a way to establish that fact. It doesn't really seem to matter what the defense attorney or any attorney intends to establish when they ask a question. When the witness testifies, there you have it. You have your evidence. That's correct. But again, there was simply a general answer that there was a discussion about the conditions, not that he, in fact, had been informed of this particular condition. And this particular condition is one of 25 conditions. It was buried among the list of standard conditions, which very often are not, in fact, ever explained at the time of probation officer, in fact, does provide the defendant's... Okay. So the other reason you argue that he didn't have notice is that he may not have received copy of the judgment, which, of course, lists all of the conditions. Correct. Do you have any case law that supports your argument that listing the conditions in the judgment is not sufficient to provide notice? So, well, or take a burrito. This court said that so long as the defendant receives a copy of the written judgment, if that's clear from the record, then that certainly satisfies the standard. In our take a burrito, they determined there wasn't anything in the record to establish that, in fact, he had received a copy of the written judgment. And therefore, this is when this court first said that we'll allow actual notice to substitute for written notice. And in that particular case, they did find that the defendant had, in fact, received actual notice of the particular condition. We maintain that that's not the case here, that it was simply some generic answer about conditions being addressed generally. Let's assume that he had notice. What's your next argument? Well, the next argument I wanted to address, Your Honor, was the court's erroneous belief that revocation was mandatory and that imprisonment was mandatory. It based this on its finding that... Where in the record does it suggest that the judge thought that he had to impose a sentence? As opposed to revoking supervised release. So the court went out of its way to say, I'm going to find that he possessed a firearm and under the statute, because he possessed a firearm, revocation is mandatory and imprisonment is mandatory. So the court came up with that on its own. Did he say that? Sorry? Did he say that, the district judge? Yes, Your Honor. Page 13. Page 13 of the... Of the excerpts of record? Okay, just a sec. This is right at the beginning where he says, all right, there's quite a bit here. Is that the page? So it's page... All right, there's quite a bit here. Yes, it's on that page. Okay, now where... So further down, so that would be three paragraphs down or two paragraphs down. You talked to the court, this is the court speaking, you talked about things that are mandatory. Title 18 U.S.C. 3553 G2, which discusses mandatory revocation for possession of a firearm. If a defendant possesses a firearm or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment. That is where we are now. I thought that was... Some place along the line that was corrected. No, Your Honor. I didn't get the impression that the judge felt that he was obligated to impose a mandatory sentence. That's exactly what he said. I mean, this started off primarily at the end of the evidentiary hearing, which was at page 88 of the record. This is where the court discusses how the probation officer, in fact, was recommending only a term of location monitoring. No imprisonment, nothing like that. And the court then discussed how, well, he's not going to get location monitoring because I'm finding that he, in fact, he was in possession of a firearm and as a result, revocation is mandatory and imprisonment is mandatory. So again, the court went out of its way to make this finding. And so clearly it meant something to the court that Mr. Thompson must have been in possession of a firearm. Now it's our position that the firearm has to be, in fact, a real firearm. Well, you didn't... That was waived. You didn't raise that during that trial or during the hearing. That it needed to be a real firearm? This antique gun and the toy gun was an affirmative defense. Well, we're not suggesting... Well, again, the government has said that it's an affirmative defense and that we're raising an affirmative defense. We're not raising an affirmative defense that it's an antique gun. Did you argue below that it was a toy gun? That it likely was a replica. In fact, that was argued. I would have to, when I sit down, try to find that in the record. The government, I believe, in its brief acknowledges that, in fact, defense counsel said it couldn't have been a replica in order for that provision to apply. And the fact is, I can't find a single case anywhere which says simply based on viewing a videotape that you can determine that a firearm is in fact a real firearm and not a replica or a BB gun or something like that. There are certainly cases where you don't have to produce the actual gun, but there they have eyewitness testimony about the particular gun. We don't have any of that here. All we have is a videotape. All you have is a videotape of him taking a gun out of his pants and putting it into a receptacle. Of something that appears to be a gun. Again, there's nothing that establishes... Under all the circumstances, why isn't it a reasonable inference for the judge to draw, especially when the burden of proof here is very low? It's a preponderance of the law. Why is it unreasonable for the court to assume that it was? No, no. To draw a reasonable inference. There was a shooting out front, right? He calls the guy in. The guy comes in. I forget who he's calling, but he comes in. Mr. Thompson was working... Thompson has it, points to his bag. Mr. Thompson, and I'm not sure if you have actually looked at the video, we're talking about a few seconds on this tape in which you can see Mr. Thompson has a gun in his hands. And there's somebody else who then puts it in a backpack. And from that very brief view on the video, there's no way to tell that, in fact, was a real gun. That's not the only evidence, right? So there was testimony from an LAPD officer that Mr. Thompson possessed a firearm. That's at ER 66. The testimony from Officer Kumlander was that he viewed the video and that based on his view of the video, he saw him in possession of a gun. There's no question that, I looked at the video, it looks like a gun. We're not disputing that it didn't look like a gun. Yeah, it's the contrary. It looks like a gun. Why can't the court conclude that it was a gun in the absence of somebody saying, hey, that wasn't a gun? Because being a gun is not enough. It has to be a firearm as defined by the statute. So for example, you know, if it's an armed robbery conviction, it doesn't have to be a real gun. You can use a toy gun for an armed robbery conviction. However, here, the statute expressly defines a firearm. And therefore, under that definition, it has to be real. It cannot be a BB gun. And we included the Washington Post article that discussed how in a two-year period, 89 individuals were killed by police officers because they were in possession of guns that looked real but weren't, including very real BB guns that look exactly like the firearms that the police carry. And that very well may be what we have here. And there simply wasn't any evidence to establish otherwise. And I see I'm over time. A little bit. A little bit. Thank you. Thank you. I'll be a minute for everybody.  Good morning, Your Honors. Miri Song on behalf of the United States. May it please the Court. Specifically as to whether or not the defendant received notice, I'd like to address that first. The District Court's in-range guideline sentence was justified by the evidence presented at the hearing. And it was imposed only after it found sufficient proof that the defendant violated his 72-hour reporting requirement by preponderance of the evidence. Now, the defendant's argument that he was not meaningfully or rather at all advised of the 72-hour reporting requirement is unavailing. And four points expose that position as also disingenuous. First and foremost, as Judge Bate has pointed out, there was a written judgment and commitment order when the defendant was sentenced for his underlying conviction that laid out each and every one of his supervised release terms and conditions, including the 72-hour reporting requirement, which was standard condition number 12 in that judgment and commitment order. Second, the defendant was advised in person by his then-probation officer. Is there anything in the record that shows that he was handed a copy of the judgment? No, Your Honor. But the probation officer specifically told or rather testified during the evidentiary hearing that his predecessor, Eddie Lawrence, I believe, advised a defendant about his supervised release conditions, which included the 72-hour reporting requirement. Third, when the probation officer at the time, Joseph Carlos, then reached out to the defendant to affirmatively ask him about the arrest that occurred on June 18, 2018, that triggered his duty to report, the defendant showed a complete lack of surprise. He didn't say, I didn't know I had to report. He didn't say, I didn't remember that I had to report. Specifically, what he did was he tried to downplay and minimize the arrest as not an arrest. And he explained to his probation officer that's why he didn't report. Now, that response isn't the response of someone who did not have noticed that he had this duty to report. And lastly, the fourth point that I want to make as to the fact that the defendant did indeed have actual notice of the 72-hour reporting requirement is that the defendant admitted that he had been advised of the terms and conditions of his supervised release, including the 72-hour reporting requirement. And for that, Your Honor, I specifically invite you to look at ER 16, where the defendant says, quote, in his allocution to the court, I'm doing okay. Now, the first choice I was from not turning into my CO or correction officer, and in this context, the probation officer, I didn't understand that. I didn't read it. But then he goes on to say, he explained it to me before I had to. I didn't remember. So the point that I want to make is that he did admit within ER 16 that the probation officer had explained this duty to report to him before. He admits that. And then he tries to say, I didn't remember. But again, the phone call that probation officer Joseph Carlos detailed during his testimony to the court shows that that's not actually the case. And again, the defendant didn't say, I didn't remember I had to report. He lied and said, I wasn't arrested. But as Officer Kumlander from the Los Angeles Police Department had testified, that was actually not true. The defendant was not only handcuffed, he was transported to the booking station. He was fingerprinted. He was tagged. He was photographed. He was then placed in jail where he had to spend the night. And then he had to post bail in order to be released. There was no question that he was arrested. And indeed, he later admits no less than three times that he had actually been arrested and that he was not forthcoming with his probation officer. For that, he says, and I quote, I'm wrong for that. I admit to that, Judge. I admit to that. I admit that I'm wrong, end quote, in ER 24. He also says, quote, only I was mad because I got arrested for no reason, end quote, ER 19. And he also said when he's talking about how he got a friend to bail him out, he says, quote, I said I got arrested, they arrested me, end quote, ER 21. So the district court found that the defendant had been notified of his 72-hour reporting requirements and that he deliberately failed to report to his probation officer, even though extraordinarily the probation officer, in a great deal of patience and compassion, waited past the 72-hour reporting requirement and called him, the defendant, two weeks later to give him an opportunity to come clean. Could you address the second point that counsel raised, which was the judge operated under the mistaken belief that he had to impose a mandate, he had to post some prison time? Yes, Your Honor. Specifically as to that, while the district court actually revoked on the basis of the 72-hour reporting requirement, and the portion of the record that Mr. Libby pointed to showed an initial kind of inclination to see whether or not this mandatory revocation applied. However, the district court then corrects himself before imposing any kind of sentence. Where did he do that? I was just looking for that after counsel sat down. Yes, Your Honor. On ER, in ER 27. ER 27? Yes, Your Honor. The defense counsel made an objection. Fine, one second. Oh, sorry. That's okay. Okay. ER 27, what lines? Starting with 23, Your Honor. Okay, I got it. He says, let's give him the benefit of the doubt. Correct, Your Honor. All right. At that point, the defense counsel, as well as the probation officer, had corrected the district court and pointed out that the actual allegation at issue here was the 72-hour reporting requirement. So instead of being a grade C, instead of being a grade B. Instead of being a grade B, it was a grade C for the applicable allegation. And that just changed the guideline range. Yes, it did. But that doesn't respond to his argument, which was because he found that he was in possession of a gun, a gun was involved, that one, he had to revoke supervised release. Two, he had to impose some incarceration time. This just only goes to the range. Where does he say, oh, I don't really have to impose. Yes, Your Honor. Specifically. But in the circumstances of the case, I do think that some time is warranted. Yes, Your Honor. If we go a little bit above the lines that I've stated, the defense counsel specifically say that this was the actual allegation is a grade C and that it was for the failure to report, not a mandatory revocation of the gun. And the judge specifically said, you're right. Let's give him the benefit of the doubt. I'm making that finding. And throughout the record, the judge makes clear that there was no question that he violated that allegation and that the government proved its burden as to that allegation. And that he will then sentence him for failing to be forthcoming with his probation officer as required. Well, he did, you know, he initially was inclined to impose, you know, a pretty significant sentence until he was corrected. Yes, Your Honor. But he was corrected and he did specifically say that the applicable allegation was the 72-hour reporting requirement and that he was going to revoke based on that. Now, I think where the confusion lies is that the district court was going to revoke no matter what. Not necessarily because it was mandatory, but because of the circumstances of the case. And truly the circumstances of the case is pretty egregious, Your Honor. In fixing his sentence, did the district court adequately address his alleged mitigation arguments? He did. He had several. Yes, Your Honor. And the district court extraordinarily had quite a bit of dialogue with the defendant. And it's, in fact, pages within the excerpt. Right. I read them with a bit of interest. Yes, Your Honor. And within that dialogue, he goes through each one of the mitigating factors that the defense put forward. And that was that he was a law-abiding citizen. The district court directly addressed it and said, we don't know that. In fact, he wasn't even forthcoming with his probation officer about the fact that he was working at an illegal marijuana store as a security guard who had a gun to protect that illegal marijuana store. As to the mental health and memory issues, Your Honor, the defense counsel undercut that own mitigating factor by saying that, quote, there had not been sufficient medically cognizable information presented at this evidentiary hearing to... There was one other argument I think he made or attempted to make, which was that he had... His original sentence had been, I forget how many years or how many months, and then it was reduced to a period of time that was less than what he had actually served, if I remember correctly. It's about four years. Yes, Your Honor. Right? Yes. And he was asked for some sort of general consideration of the extra time that he had already spent. Yes, Your Honor. And I see that I'm out of time, but I'm... I'm just curious. The district court specifically stated that this is someone who has been given several chances before, and that the criminal history score suggests that he was not actually a law abiding citizen as they put forward as a mitigating factor. So the court did consider the various mitigating factors. However, given the kind of evidence that came forward, I believe the district court gave them the due weight that it deserved, and he did address them in his dialogue with the defendant. Okay. I apologize. I went over. Okay. Thank you. Thank you, Your Honors. I'll give you a minute for rebuttal. Thank you, Your Honor. I appreciate that. If I just address some of the last points counsel was making with respect to some of the sentencing arguments, counsel kept bringing up some argument about him being a law abiding citizen. I don't recall there being any argument about Mr. Thompson being a law abiding citizen. The arguments were that he had serious mental health issues. Nothing was undercut. Defense counsel objected to an additional supervised release condition that could have subjected him to additional imprisonment should he not take his medications. But there was nothing to suggest that he didn't have serious mental health issues. It was in the original violation report, and it was testified to by the probation officer. All of that was in the record. The arguments were made that these were mitigating factors. The court simply did not address them at all. And I did not hear opposing counsel say otherwise, unless the court has additional questions. I thank the court. Thank you. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted at this time.
judges: Kelly, Paez, Bade